AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Southern District of California

FILED

NOV - 7 2019

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                        DEPUTY

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )    Case No.
)
Apple iPhone Cellular Phone ) **19MJ4957**
Model No. A1549 )
IMEI 355791074855011 )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the ___Southern___ District of ___California___, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 952, 960 and 963 | Importation of controlled substances and conspiracy |

The application is based on these facts:

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Khalid Avila-Williams, SA, Homeland Sec. Investigations
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 11/7/19

*Judge's signature*

City and state: San Diego, CA       Hon. Allison H. Goddard, U.S. Magistrate Judge
*Printed name and title*

# Attachment A

## *Item to be Searched*

The item to be searched is as follows:

    Apple iPhone Cellular Phone
    Model No. A1549
    IMEI 355791074855011
    ("**Target Device 1**")

**Target Device 1** is currently in the possession of the Department of Homeland Security and is presently stored at 880 Front Street, San Diego, CA 92101.

*Affidavit in Support of Search Warrant*      1

## Attachment B

### *Items to be Seized*

Authorization to search the cellular/mobile telephones and tablet described in Attachment A ("**Target Device 1**") includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephones and tablet for evidence described below. The seizure and search of the cellular/mobile telephones and tablet shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular/mobile telephones and tablet will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, from August 24, 2019 up to and including October 25, 2019:

    a.    tending to indicate efforts to import heroin or some other federally controlled substance from Mexico into the United States;

    b.    tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of heroin or some other federally controlled substance from Mexico into the United States;

    c.    tending to identify co-conspirators, criminal associates, or others involved in importation of heroin or some other federally controlled substance from Mexico into the United States;

    d.    tending to identify travel to or presence at locations involved in the importation of heroin or some other federally controlled substance from Mexico into the United States;

    e.    tending to identify the movement of proceeds associated with the trafficking of heroin or some other federally controlled substance that was imported from Mexico into the United States;

1        f.    tending to identify the user of, or persons with control over or access to, **Target Device 1**; and/or

       g.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above, which are evidence of violations of Title 21, United States Code, Sections 952, 960, and 963.

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Khalid Avila-Williams, having been duly sworn, do hereby state that the following is true to my knowledge and belief:

## INTRODUCTION

1. I make this affidavit in support of an application for a warrant to search the following electronic device:

> Apple iPhone Cellular Phone
> Model No. A1549
> IMEI 355791074855011

("**Target Device 1**"), as further described in Attachment A, and seize evidence of violations of federal law, namely 21 U.S.C. §§ 952, 960, and 963, as further described in Attachment B.

2. This search warrant supports an investigation and prosecution of Jesus Rodrigo LUGO HERRERA (LUGO HERRERA), for importing approximately 1.68 kilograms of heroin from Mexico into the United States. *See U.S. v Jesus Rodrigo Lugo Herrera,* Case No. 19-mj-4702-KSC (S.D. Cal.) at ECF No. 1 (Complaint).

3. Officers with the Department of Homeland Security, United States Customs and Border Protection ("CBP"), seized **Target Device 1** from LUGO HERRERA on October 24, 2019, when he was arrested at the San Ysidro, California, Port of Entry ("POE") for drug smuggling, in violation of 21 U.S.C. §§ 952 and 960. **Target Device 1** is currently in the possession of the Department of Homeland Security and is presently stored at 880 Front Street, San Diego, California 92101.

4. The information contained in this affidavit is based upon my training, experience, investigation, and consultation with other members of law enforcement, including my review of reports prepared by other law enforcement officers and agents. Because this affidavit is made for the limited purpose of obtaining a search warrant for the Target Device, it does not contain all the information known by me or other agents regarding this investigation. All dates and times described are approximate.

## TRAINING AND EXPERIENCE

5. I am a Special Agent with the United States Department of Homeland Security, Homeland Security Investigations (HSI). I am currently assigned to the HSI San Diego Office. I have been a full-time, sworn federal agent with HSI since 2018. Prior to my employment with HSI, I was employed by the Florida Division of Alcoholic Beverages and Tobacco as a Special Agent and later promoted to the rank of Lieutenant. In this role, I served the citizens of the State of Florida as a Criminal Investigator for over 10 years. In that role, I conducted numerous narcotics, vice, intellectual property, and financial investigations. Additionally, for approximately two years, I was employed as a United States Probation Officer in the Northern District of Texas. During my employment, I conducted numerous interviews with persons on supervised release, provided written and oral status reports to sentencing judges, and provided court testimony.

6. I have completed extensive criminal investigation training at the Federal Law Enforcement Training Center in Glynco, Georgia, including training in conducting narcotics smuggling investigations and training in the methods, devices, and practices common to individuals and organizations who smuggle narcotics and narcotics proceeds. I have completed training in computers and data through various courses in electronic law and evidence and other training about the investigative uses of data and how it might be found. Additionally, I have completed training at the Federal Law Enforcement Training Center in Charleston, South Carolina, including training conducting financial investigations and also interviewing.

7. During my tenure with HSI, I have participated in the investigation of various drug trafficking organizations involved in the importation and distribution of controlled substances into and through the Southern District of California.

8. Through my training, experience, and conversations with other members of law enforcement, I have gained a working knowledge of the operational habits of narcotics traffickers, in particular those who attempt to import narcotics into the United States from Mexico at Ports of Entry. I am aware that it is common practice for narcotics smugglers to

work in concert with other individuals and to do so by utilizing cellular telephones. Because they are mobile, the use of cellular telephones permits narcotics traffickers to easily carry out various tasks related to their trafficking activities, including, *e.g.*, remotely monitoring the progress of their contraband while it is in transit, providing instructions to drug couriers, warning accomplices about law enforcement activity, and communicating with co-conspirators who are transporting narcotics and/or proceeds from narcotics sales.

9. Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that cellular telephones (including their Subscriber Identity Module (SIM) card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. In particular, in my experience and consultation with law enforcement officers experienced in narcotics trafficking investigations, I am aware that individuals engaged in drug trafficking commonly store photos and videos on their cell phones that reflect or show co-conspirators and associates engaged in drug trafficking, as well as images and videos of drugs or contraband, proceeds and assets from drug trafficking, and communications to and from recruiters and organizers.

10. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones may yield evidence:

> a. tending to indicate efforts to import heroin, or some other federally controlled substance, from Mexico into the United States;
>
> b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of heroin, or some other federally controlled substance, from Mexico into the United States;

    c.    tending to identify co-conspirators, criminal associates, or others involved in importation of heroin, or some other federally controlled substance, from Mexico into the United States;

    d.    tending to identify travel to or presence at locations involved in the importation of heroin, or some other federally controlled substance, from Mexico into the United States, such as stash houses, load houses, or delivery points;

    e.    tending to identify the user of, or persons with control over or access to, the Target Device; and/or

    f.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS IN SUPPORT OF PROBABLE CAUSE

11.    According to the report of Customs and Border Protection Officer (CBPO) Boswell, on October 24, 2019, at about 4:55 a.m., LUGO HERRERA attempted to enter the United States through the pedestrian east facility at the San Ysidro POE. LUGO HERRERA presented a legal permanent resident card bearing his name. At the time, CBPO Boswell and his canine were conducting post primary operations in the pedestrian area of the POE. The canine alerted to the waistband of LUGO HERRERA who declared he had a container of marijuana in his pocket. Once the container was removed, CBPO Boswell received another alert from his canine to the waistband of LUGO HERRERA.

12.    According to the report of CBPO Clark, Officer Clark assisted CBPO Boswell with the positive alert. LUGO HERRERA declared he had something in his stomach area. CBPO Clark conducted a pat down and search of LUGO HERRERA and discovered a cellophane wrapped package on LUGO HERRERA's stomach.

13.    According to the report of CBPO Morris, Officer Morris seized, probed, tested and weighed the package. The package weighed about 1.68 kilograms (3.70 pounds). The substance was field tested and tested positive for the properties of heroin.

14.    LUGO HERRERA was placed under arrest for violation of 21 U.S.C. §§ 952 and 960. **Target Device 1** was found in his possession and seized incident to his arrest.

15.    Post-arrest, I read LUGO HERRERA his *Miranda* rights, and he agreed to speak to me without an attorney present. LUGO HERRERA advised he agreed to transport the package, which he knew contained drugs, into the United States in exchange for monetary compensation. LUGO HERRERA advised he was to deliver the package in San Diego, California, and provided his cell phone number as a contact number to the smuggling coordinator in Mexico.

16.    Based upon my experience investigating drug smuggling, my training, and my consultation with other investigators who have experience investigating drug smuggling near the border, I understand that drug smugglers will seek to smuggle drugs from Mexico to the United States by hiding drugs internally (insertion of narcotics into body openings) or on the bodies of carriers (affixed and covered with layer(s) of clothing). Smugglers will then travel north from Mexico and seek to pass through POEs with the drugs undetected. (I am also aware that such individuals will sometimes try to generate a history of crossings to show that traveling through a POE is ordinary behavior for them.) When they arrive in the United States, smugglers will take the drugs to a discreet location to transfer them to other people involved in the distribution chain, who can then send the drugs to other locations for downstream distribution.

17.    Given the facts surrounding the arrest of LUGO HERRERA, and based upon my experience and training, as well as consultation with other law enforcement officers experienced in drug smuggling investigations, I submit that there is probable cause to believe that information relevant to the smuggling activity of LUGO HERRERA will be found in **Target Device 1**.

18.    Finally, I note that drug conspiracies generally entail detailed and intricate planning as part of efforts to evade detection by law enforcement. In my professional training and experience, I am aware that this requires planning and coordination in the days and weeks (and often months) prior to the relevant drug-related event. Additionally, I am aware that co-conspirators are often unaware of a subject's arrest and will continue to attempt to communicate with the subject after the arrest to determine the whereabouts of

their valuable cargo, particularly in the hours following the arrest. Therefore, I believe that the appropriate date range for the search of **Target Device 1** is from August 24, 2019, up to and including October 25, 2019 (*i.e.*, the day after the events described in this affidavit).

## METHODOLOGY

19. It is not possible to determine, merely by knowing a cellular telephone's or tablet's make, model and serial number, the nature and types of services to which the devices are subscribed and the nature of the data stored on the devices. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their devices—both phones and tablets—over the internet and remotely destroy all of the data contained on the devices. For that reason, the devices may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones and tablets do not have hard drives or hard-drive equivalents and store information in volatile memory within the devices or in memory cards inserted into the devices. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models, and some tablets, using forensic hardware and software. Even if some of the stored information on the devices may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

20. Following the issuance of this warrant, I will collect **Target Device 1** and subject it to analysis. All forensic analysis of the data contained within **Target Device 1**

and any associated memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

21. Based on the foregoing, identifying and extracting data subject to seizure pursuant to these warrants may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days, absent further application to this court.

### PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE

22. Law enforcement has not yet attempted to obtain the evidence sought by this warrant.

### CONCLUSION

23. Based on all of the facts and circumstances described above, I believe probable cause exists to conclude that LUGO HERRERA used **Target Device 1** to facilitate the offense of drug smuggling and to communicate with co-conspirators. **Target Device 1** was likely used to facilitate the offenses by transmitting and storing data, which constitutes evidence of violations of Title 21, United States Code, Sections 952, 960, and 963.

24. Because **Target Device 1** was promptly seized following the arrest of LUGO HERRERA at the San Ysidro POE, there is probable cause to believe that evidence of the smuggling offense committed by him continues to exist on **Target Device 1**. As stated above, I believe that the date range for this search is from August 24, 2019, up to and including October 25, 2019.

25. WHEREFORE, I request that the court issue a warrant authorizing HSI Special Agents and/or other federal and state law enforcement officers specially trained in digital evidence recovery, to search **Target Device 1**, as described in Attachment A, and seize the items listed in Attachment B, using the methodology described above.

I swear the foregoing is true and correct to the best of my knowledge and belief.

_____
KHALID AVILA-WILLIAMS
Homeland Security Investigations Special Agent
Department of Homeland Security

Subscribed and sworn to before me on this ___7th___ day of November, 2019.

_____
THE HON. ALLISON H. GODDARD
United States Magistrate Judge

*Affidavit in Support of Search Warrant*  8